

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-2009

# In Re: Cone Mills Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1755

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"In Re: Cone Mills Co " (2009). *2009 Decisions.* Paper 1786.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1786

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 08-1755

_____

IN RE: CONE MILLS CORPORATION, et al,
Debtors

CROMPTON COLORS INC.; CROMPTON CORPORATION,
Appellants

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-05-cv-00232)
District Judge: Honorable Gregory M. Sleet

_____

Argued January 12, 2009

Before: SLOVITER and BARRY, Circuit Judges,
and POLLAK[*], District Judge

(Filed : March 03, 2009 )

_____

John M. Armstrong, Esq.
Schnader Harrison Segal & Lewis
220 Lake Drive East
Woodland Falls Corporate Park
Cherry Hill, N.J.  08002

Gerard S. Catalanello , Esq.  (Argued)
WolfBlock
250 Park Avenue
New York, N.Y.  10177

---

[*] Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Virginia L. Hogben, Esq.
WolfBlock
1650 Arch Street
22nd Floor
Philadelphia, PA 19103

      Attorneys for Appellants

Michael R. Lastowski, Esq.  (Argued)
Duane Morris
1100 North Market Street
Suite 1200
Wilmington, DE 19801

      Attorney for Appellee

_____

## OPINION

_____

SLOVITER, <u>Circuit Judge</u>.

Crompton Colors Corporation (now known as "Chemtura"),[1] appeals the District Court's order affirming the Bankruptcy Court's ruling that Chemtura is bound by the order authorizing the sale ("Sale Order") of substantially all of the assets of Cone Mills Corporation ("Cone Mills"), a chapter 11 debtor in bankruptcy proceedings, to the predecessors of International Textile Group ("ITG"). Cone Mills had operated a dye and chemical manufacturing facility at the property that it sold more than thirty years ago to a predecessor of Chemtura. Chemtura claims that it had known environmental litigation

_____

[1] On July 1, 2005, Crompton Corporation changed its name to Chemtura Corporation.

2

claims against Cone Mills before the bankruptcy proceedings and that its claims were not extinguished by the sale because Cone Mills allegedly failed to provide Chemtura with constitutionally adequate notice. On this basis, Chemtura sought to bring successor liability claims against ITG, which succeeded the companies that purchased Cone Mills' assets. ITG moved the Bankruptcy Court to enforce the Sale Order against Chemtura. The Bankruptcy Court granted ITG's motion, ruling that Chemtura received proper notice of the sale and that the bankruptcy sale barred future successor liability claims against ITG.

## I.

The parties are familiar with the factual and procedural background and we will not repeat them here, except for the brief factual statement underlying this opinion.

On September 24, 2003, Cone Mills filed a voluntary petition for bankruptcy under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Thereafter, Cone Mills filed a motion for an order "authorizing the sale of substantially all of [its] assets . . . free and clear of liens, claims, encumbrances, and interests." Supp. App. at 1453.

On November 7, 2003, the Bankruptcy Court approved Cone Mills' motion, and scheduled a sale hearing for February 9, 2004. The Bankruptcy Court ordered Cone Mills to serve notice of the sale hearing on certain parties, including "all persons with potential claims against the Debtor of at least $ 100,000 (based on filed proofs of claim or [Cone

3

Mills'] schedules or books and records)." Supp. App. at 1428. The Bankruptcy Court also ordered service of the notice of the sale hearing on "parties to all unexpired leases, license agreements and executory contracts" ("Cure Amount Notice") so that such parties could make objections to "cure" any additional amounts due or in default. Supp. App. at 1422. The Bankruptcy Court also required notice by publication. The Bankruptcy Judge approved Cone Mills' proposed form of notice for each set of parties and attached the forms of notices as exhibits to the order.

After the sale hearing on February 9, 2004, "at which time all interested parties were offered an opportunity to be heard with respect to" the proposed sale, Supp. App. at 1540, the Bankruptcy Court issued the order authorizing the sale of substantially all of Cone Mills' assets to ITG's predecessors (hereafter "Buyers"). The Sale Order provided that the Buyers would acquire the assets "free and clear of liens, claims, encumbrances, and interests." Supp. App. at 1539. The Sale Order also incorporated a finding of fact that the Buyers would not have agreed to the Asset Purchase Agreement ("APA") if the sale "was not free and clear of all Interests of any kind or nature whatsoever, or if [ITG] would, or in the future could, be liable for any of the Interests."[2] Supp. App. at 1544. The order further provided that those interest-holders who had not objected to the sale were deemed to have consented to the sale, and that the Buyers are not the successor to

---

[2] The Sale Order defines "Interests" very broadly to include "liabilities, demands . . . [and] claims . . . arising under doctrines of successor liability." Supp. App. at 1544.

4

Cone Mills "by reason of any theory of law or equity" and shall not be responsible for any of its liabilities or obligations, including environmental claims. Supp. App. at 1545.

In August 2004, the New Jersey Department of Environmental Protection ("NJDEP") brought environmental remediation claims against Chemtura and ITG in state court, and Chemtura cross-claimed against ITG for contribution and unjust enrichment. On December 13, 2004, Chemtura filed a proof of claim, asserting what are essentially successor liability claims against ITG. ITG filed a motion with the Bankruptcy Court to direct the NJDEP and Chemtura to comply with the Sale Order, arguing that these successor liability claims violated the terms of that order. Chemtura responded that the sale should not be enforced against it because Cone Mills failed to provide it with notice that its "environmental/successor liability claims . . . would be eliminated because of the asset sale." App. at 1013.

Chemtura alleges that it was not served with the "auction and sale notice," or the many other forms of notice it claims it should have received, and alleges that it was "left off of all service lists related to the notice of sale, the motion to approve the sale, the proposed order and the Sale Agreement." Appellant's Br. at 14-15. It concedes that it received the Cure Amount Notice on November 25, 2003, but contends that because that notice was not addressed to a particular person in the corporation, the notice was sent to the credit department which had no information on Cone Mills and placed the Cure Amount Notice in an "inactive, 'dead' file." App. at 1026. As a result, the document was

5

not "discovered" until February 16, 2005, shortly before a hearing on February 28, 2005, before the Bankruptcy Court on ITG's motion to enforce the sale.

Following an evidentiary hearing, the Bankruptcy Court delivered an oral ruling finding for ITG, holding that the notice was provided in accordance with Rule 2002 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and that, because Chemtura also had actual notice, it was "precluded from now attacking the sale order." App. at 1334. Chemtura appealed this decision to the District Court, which affirmed the Bankruptcy Court. Chemtura timely filed this appeal.[3]

## II.

Chemtura was a general unsecured creditor of Cone Mills. The District Court held that as a matter of law it was not entitled to the same notice of an asset sale authorized under 11 U.S.C. § 363(f) as that which must be given to lienholders under Bankruptcy Rules 6004(c), 9014 and 7004. In reviewing (and affirming) the order of the Bankruptcy

---

[3] The District Court had jurisdiction to review the Bankruptcy Court order under 28 U.S.C. § 158(a), and this court has jurisdiction under 28 U.S.C. § 158(d). "In reviewing the bankruptcy court's determinations, we exercise the same standard of review as the district court, that is, we review the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof." Interface Group-Nevada, Inc. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.), 145 F.3d 124, 131 (3d Cir. 1998) (internal quotations and citations omitted).
.

6

Court, the District Court stated that it was "undisputed that notice of the sale was sent to Chemtura at the address: Crompton Corporation, Benson Road, Middlebury, CT 06749" and it was then placed in a "'dead' file." App. at 6. The Court agreed with the Bankruptcy Court's conclusion that Rule 6004(a) and Rule 2002(a)(2) controlled the notice of service aspect of this case. The District Court stated that "Rule 6004 governs the use, sale, or lease of property," and that subdivision (a) of that rule "specifically addresses notice requirements" and only requires that notice of a proposed "free and clear" sale of assets be "given pursuant to Rule 2002(a)(2)." App. at 7-8.

Under Rule 2002, notice of a sale order to be given to general unsecured creditors (such as Chemtura) that have not designated an alternate address is to be directed to the creditor's address that is found in the debtor's records. The notice to Chemtura was sent to its business address in Middlebury, Connecticut. Following a lengthy hearing, the Bankruptcy Court concluded that Chemtura received the notice required under Rule 2002(a) and that it had actual notice of the sale.

Chemtura argues that pursuant to Rule 6004(c) the notice should have been directed to one of its officers or other authorized agents. The Bankruptcy Court, in reasoning that the District Court approved, rejected Chemtura's argument, noting that Chemtura's interpretation "would eliminate Rule 2002(a)(2) and 6004(a)." App. at 1333.

We are persuaded by the District Court's conclusion. In short, Chemtura was not entitled to any heightened form of notice. The sale notice that Chemtura received

7

referred to the motion to approve the sale, described the assets to be sold, stated the manner in which the APA could be obtained, stated the date and time of the sale hearing and the deadline to object to the sale. Thus Chemtura received all the notice that was due. The failure of its credit department to forward the notice to the legal department was its responsibility. The District Court also agreed with the Bankruptcy Court's conclusion that Chemtura is bound by the Sale Order because it had actual notice of the sale. Chemtura does not deny that it received such actual notice.

As a result, Chemtura has no basis to assert its claims against ITG which acquired Cone Mills' assets free and clear. Of course, Chemtura retains its claim against Cone Mills as an unsecured creditor. For the reasons set forth, we will affirm the District Court's order.